UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| HAMMER & STEEL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:18 CV 1240 CDP |
| | ) | |
| SKY MATERIALS CORP., | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM AND ORDER**

Beginning in the summer of 2017 Plaintiff Hammer & Steel, Inc. leased and sold construction machinery to defendant Sky Materials Corp. By the time Sky returned the last of the rented equipment in the summer of 2018, it owed Hammer over half a million dollars that it refused to pay. Hammer filed this case seeking monies owed under the invoices, together with interest and attorneys fees allowed by the contracts.

From the beginning of this case, Sky asserted that it had kept the equipment all that time only because Hammer repeatedly asked it to do so. Although Hammer has always denied that it ever asked Sky to keep the equipment or that it agreed Sky did not have to pay the amounts due, this certainly sounds like a good defense if it could be proved to a jury at a trial. All that would be needed would be testimony by whoever had these conversations with Hammer, providing some basic details such as

what Hammer representative made these multiple requests, and providing any documentation that Sky had about the alleged agreement.  Given Hammer's denials that the conversations took place, it would be a classic fact issue for a jury.

It turns out that Sky has absolutely no admissible evidence to support this defense, although Sky continues to assert it.  No Sky witness has testified to actually participating in such a conversation with Hammer.  All Sky witnesses pointed to one another as the persons who had the conversations, but when questioned these witnesses all denied (or could not recall) having these conversations.  As no witness actually remembers any actual conversations, Sky can't recall who at Hammer allegedly asked it to keep the equipment without paying for it, but it points to some of Hammer's employees who, it says, it must have spoken to about this because they were the people at Hammer that Sky dealt with.  But these Hammer employees deny that such conversations ever took place.  Sky also has no documents supporting the alleged agreement.  Sky asserts that this "somebody told somebody something" argument presents a genuine dispute of material fact for trial.

In response to an early summary judgment motion filed by Hammer, Sky's president provided an affidavit "on my own personal knowledge" averring to all sorts of details about what Sky and Hammer said on this issue.  In his deposition, however, the president claimed not to recall the affidavit at all, later admitted it looked like his signature, and stated that he had no recollection of any conversation or

details. All he knew was that there had been "some conversations" about what to do with the equipment. When asked who had the conversations, he did not say he had them himself but stated instead that he "would have to look into it" and listed other Sky people he would ask. However, none of those people he listed actually testified that they were part of the alleged conversations with Hammer. Now, in response to Hammer's second summary judgment motion, Sky argues that the president can testify that he himself had the conversations.

There is no admissible evidence that anyone from Hammer ever told Sky to keep the equipment without paying for it. Under the uncontroverted evidence presented by Hammer, Sky breached the contract and Hammer is entitled to judgment as a matter of law.

## Undisputed Material Facts

On July 20, 2017, plaintiff Hammer & Steel, Inc. leased to defendant Sky Materials Corp. a Comacchio Tieback Machine Model MC 14 (MC 600P), a Eurodrill RH 17X, and a Percussion Unit for the RH 17X at the monthly rental rate of $18,000.00, plus taxes and transportation to and from the construction site. (Doc. 5-1). On September 26, 2017, Hammer leased to Sky a Delmag RHV 40 Hydraulic Drilling Machine, a Delmag BT 400-2/495 Rotary Head, and a Kelly Bar K495/3-27 480 mm at the rate of $40,000.00 per month, plus taxes and transportation to and from the construction site. (Doc. 5-4). On October 24, 2017, Hammer leased a

Comacchio Tieback Machine Model MC 28 HD, Eurodrill RH 17X, and a Eurodrill RH 4300 to Sky at the rate of $24,000.00 per month, plus taxes and transportation to and from the construction site. (Doc. 5-3). On November 27, 2017, Hammer sold Sky a SIP & T Automatic Casing Twister 750 mm for $12,445.00, plus taxes. (Doc. 5-2). In December of 2017 and January of 2018, Hammer sold Sky various parts for equipment leased and owned by Sky in the total amount of $11,127.28. (Doc. 88-1 at 2). Hammer sent invoices for all equipment and parts, whether leased or sold, to Sky.

The Comacchio Tieback Machine Model MC 14 (MC 600P) was shipped from Hammer's equipment yard in New Jersey on July 31, 2017 and returned to Hammer at the same location on January 11, 2018. (Doc. 74-1 at 1). The Comacchio Tieback Machine Model MC 28 HD was shipped from Hammer's equipment yard in New Jersey on October 31, 2017 and returned to Hammer at the same location on December 28, 2017. (Doc. 74-1 at 1). The Delmag RHV 40 Hydraulic Drilling Machine was shipped from Hammer's equipment yard in New Jersey on October 23, 2017, and returned to Hammer at the same location on June 22, 2018. (Doc. 74-1 at 4).

The lease agreements provide that "the rental period shall begin on and include the date of shipment to [defendant] and shall end on and include the date of return to [plaintiff's] warehouse or designated place of return." (Doc. 5-1 at 2, 5-3 at 2, 5-4 at 2). They further state that "no allowances will be granted due to non-working time

caused by factors such as bad weather, holidays, strikes, or other delays in the job over which [plaintiff] has no control. No allowances will be granted due to equipment down-time for routine parts replacement." (Doc. 5-1 at 2, 5-3 at, 5-4 at 2). According to the terms of the lease agreements, either Hammer or Sky "may terminate this agreement at any time, by written notice, for failure of the other party to comply with any of its terms and conditions." (Doc. 5-1 at 3, 5-3 at 3, 5-4 at 3). Finally, in the event of litigation, the lease agreements require Sky to pay Hammer's reasonable attorneys' fees and expenses incurred in connection with collecting amounts due and owing. (Doc. 5-1 at 4, 5-3 at 4, 5-4 at 4). They also provide for pre-judgment interest at one and one-half percent per month, compounded monthly, on all unpaid amounts. (Doc. 5-1 at 4, 5-3 at 4, 5-4 at 4). Post-judgment interest at the same rate is also included. (Doc. 5-1 at 4, 5-3 at 4, 5-4 at 4). The agreements are governed by Missouri law. (Doc. 5-1 at 4, 5-3 at 4, 5-4 at 4).

The total amount unpaid on the invoices (after allowing credit for partial payments) is $526,966.78. (Doc. 88-3 at 4). As of October 24, 2019, pre-judgment interest, calculated under the terms of the leases, in the amount of $173, 660.41 has accrued. (Doc. 88-3 at 4).

## Summary Judgment Standard

The standard for summary judgment is well settled. In determining whether summary judgment should issue, the Court must view the facts and inferences from

the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Littrell v. City of Kansas City, Mo.*, 459 F.3d 918, 921 (8th Cir. 2006); *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005). The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Enterprise Bank v. Magna Bank of Missouri*, 92 F.3d 743, 747 (8th Cir. 1996). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in its pleadings but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(c); *Anderson*, 477 U.S. at 256; *Littrell*, 459 F.3d at 921; *United of Omaha Life Ins. Co. v. Honea*, 458 F.3d 788, 791 (8th Cir. 2006). An issue of fact is genuine when "a reasonable jury could return a verdict for the nonmoving party" on the question. *Anderson*, 477 U.S. at 248; *Woods*, 409 F.3d at 990.

To survive a motion for summary judgment, the "nonmoving party must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor based on more than mere speculation, conjecture, or fantasy." *Putman v. Unity Health System*, 348 F.3d 732, 733–34 (8th Cir. 2003) (internal quotation marks and alterations omitted). "The mere existence of a scintilla of

evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson*, 477 U.S. 242 at 252*; Davidson & Associates v. Jung*, 422 F.3d 630, 638 (8th Cir. 2005). "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." *Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007).

## Discussion

Hammer alleges that Sky owes it $526,966.78 in unpaid equipment rentals and purchases, services, and parts, plus interest at the contractually agreed upon rates and $106,134.85 in attorneys' fees and expenses. Missouri law governs Hammer's breach of contract claims. (Doc. 5-1 at 4, 5-3 at 4, 5-4 at 4). "Under Missouri law, a breach of contract action includes the following essential elements: (1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff." *Smith Flooring, Inc. v. Pennsylvania Lumbermens Mut. Ins. Co.*, 713 F.3d 933, 941 (8th Cir. 2013) (internal quotation marks and citation omitted).

Sky admits to the existence and terms of the contracts at issue, which require payment as alleged by Hammer. Although Sky argues that Hammer did not

sufficiently demonstrate the dates upon which the three drilling machines[1] were delivered to Sky and returned to Hammer, Hammer has presented evidence, through the uncontested affidavit of its Controller Debbie Blackmon,[2] which supports these dates. (Doc. 74-1). Sky has pointed to no *evidence* demonstrating that these facts are genuinely disputed.[3] "Simply . . . alleging that a fact is otherwise[] is insufficient to show there is a genuine issue for trial." *Kountze ex rel. Hitchcock Foundation v. Gaines*, 536 F.3d 813, 818 (8th Cir. 2008). The Court concludes there is no dispute as to the existence and terms of Hammer's contracts with Sky, including the dates on which the three drilling rigs were delivered to, and subsequently returned by, Sky.

Sky argues that summary judgment is inappropriate in this case because there is a disputed issue as to whether it attempted to return the drilling machines but was told by Hammer to keep them (at no additional rental fees) because Hammer had no place to store the equipment. This issue was raised by Sky in opposition to Hammer's first motion for summary judgment, which was filed early in this case. (Doc. 23). In its opposition to that summary judgment motion, Sky submitted the

---

[1] The drilling machines are the Comacchio Tieback Machine Model MC 14 (MC 600P), the Comacchio Tieback Machine Model MC 28 HD, and the Delmag RHV 40 Hydraulic Drilling Machine).

[2] This affidavit meets the requirements of Fed. R. Civ. P. 56(c)(4).

[3] Sky's response (Doc 96) to Hammer's statement of uncontested facts denies many of the facts, but then provides no admissible or probative evidence to support the denials that could give rise to a genuine dispute about any of the facts.

affidavit of its President, Michael Cholowsky. (Doc. 31-1). Mr. Cholowsky averred that soon after receiving the equipment, Sky experienced delays on the job for which it had planned to use the equipment, and so sought to return it to Hammer in February or March of 2018. (Doc. 31-1 at 2). Mr. Cholowsky's affidavit goes on to say Hammer told Sky that it "had no place to put the equipment, and instead instructed Sky to keep the equipment at the job site for Hammer & Steel's convenience." (Doc. 31-1 at 2). According to Mr. Cholowsky's affidavit, Sky was "repeatedly" instructed by Hammer to retain the equipment and "it was clear that Sky was not to incur lease charges during this period while the equipment was on the site pursuant to Hammer & Steel's direction, but was not in use." (Doc. 31-1 at 2). Hammer's witnesses have consistently denied ever having such conversations. Because of this factual dispute, the Court denied plaintiff's first motion for summary judgment and discovery proceeded in the case.

Hammer then deposed Mr. Cholowsky who, when questioned about the alleged conversations regarding the return of the equipment, evasively stated that he "would have to look into" who from Sky participated in these alleged conversations. (Doc. 49-6 at 11).[4] Mr. Cholowsky then indicated that two of Sky's employees, Warren

---

[4] When questioned about the affidavit, Mr. Cholowsky stated "I don't remember the document," "No, I don't recall signing it," and "Oh I'm not saying I never saw it. I don't recall it, as I sit here today." (Doc. 49-6). The deposition took place approximately two and a half months after the affidavit was signed.

9

Linnane[5] and Rory Braiden, were involved in these conversations. (Doc. 49-6 at 11). When questioned about who participated in these conversations on Hammer's behalf, Mr. Cholowsky stated that he didn't recall and "would like to speak to my staff about that." (Doc. 49-6 at 12). After Mr. Cholowsky was unable to testify as to any recollection of the alleged conversations, Sky continued to indicate in its amended interrogatory answers that Mr. Cholowsky (as well as Mr. Braiden) communicated with Hammer on this issue. These amended interrogatory responses were signed by Mr. Cholowsky and stated that Hammer told Sky that it did not have room to store the equipment so that Sky should keep the equipment at its job location for the convenience of Hammer and without incurring additional rental fees. (Doc. 49-5).

Mr. Cholowsky's inconsistent testimony in his affidavit and deposition, together with Sky's amended interrogatory responses on this issue, prompted Hammer to move for sanctions against Sky. (Doc. 49). After briefing and a hearing on this motion, I sanctioned Sky by prohibiting Mr. Cholowsky from testifying "in any manner inconsistently" with his deposition testimony and ordered Sky to once again amend its interrogatory responses. (Doc. 67). Sky did so, this time indicating that Mr. Linnane as well as Mr. Cholowsky and Mr. Braiden personally participated in conversations with Hammer in which Sky allegedly indicated its intention to return

---

[5] At his deposition, Mr. Linnane clarified this as the correct spelling of his name, not "Linane" as previously indicated by counsel and the Court. (Doc. 83-1 at 6).

the equipment but was told by Hammer to keep the equipment for the convenience of Hammer (and at no cost to Sky) as Hammer lacked the space to store it. (Doc. 80-1). The second amended interrogatory responses were signed on behalf of Sky by Mr. Braiden.

Hammer then deposed Mr. Linnane and Mr. Braiden. Mr. Linnane and Mr. Braiden both denied or could not recall that they ever participated in any conversations with anyone from Hammer who told them that Sky should keep the equipment on site because Hammer had no place to store it.

Sky argues that Mr. Cholowsky's deposition is sufficient to create a genuine issue for a factfinder regarding whether he himself had conversations about returning the equipment to Hammer. I disagree. No reasonable factfinder could read his testimony in that manner. When questioned specifically about who participated in these alleged conversations, Mr. Cholowsky stated that he "would have to look into it" by asking other people, including Mr. Linnane and Mr. Braiden. He did not respond that he personally participated in any such conversations, and no reasonable inference can be permitted otherwise.

"It is well-settled that parties to a motion for summary judgment cannot create sham issues of fact in an effort to defeat summary judgment." *Bass v. City of Sioux Falls*, 232 F.3d 615, 618 (8th Cir. 1999) (internal citation and quotation omitted). That is just what Sky seeks to do here. When questioned under oath at depositions,

*none* of Sky's witnesses ever testified to being told personally by any specific person from Hammer that Sky should keep the equipment without paying for it because Hammer lacked the space to store it. Instead, all these witnesses could say is that someone else at Sky must have had these conversations.[6] This is wholly insufficient to create a triable issue of fact.

In an additional attempt to avoid summary judgment, Sky argues that "none of the three leases (for the drilling machines) were properly terminated in accordance with their terms, thereby raising further questions and unresolved circumstances that directly impact plaintiff's damage calculations." (Doc. 96 at 6). In support of this argument, Sky relies upon the provision in the lease agreements which permit either party to "terminate this agreement at any time, by written notice, for failure of the other party to comply with any of its terms and conditions." (Doc. 5-1 at 3, 5-3 at 3, 5-4 at 3). But Hammer does not contend that it terminated the agreements. Instead, Hammer seeks to collect the rental payments due and owing under the plain language of the agreements, which provide that "the rental period shall begin on and include the date of shipment to [defendant] and shall end on and include the date of return to [plaintiff's] warehouse or designated place of return." (Doc. 5-1 at 2, 5-3 at 2, 5-4 at

---

[6] Sky also offers no testimony from anyone on behalf of Hammer that these alleged conversations took place, and Hammer's witnesses all deny that such conversations ever occurred. (Doc. # 49-9, 49-10, 49-11). There are no recordings or written records reflecting or even mentioning these alleged conversations.

2). The lease agreements remained in effect, by their terms, until the equipment was returned to Hammer. Although Sky returned the equipment, it did not pay the amounts due and owing for the contractual rental period. As Hammer was not required to provide written notice to Sky because it did not terminate the lease agreements, the absence of a written notice of termination is irrelevant to Hammer's breach of contract claim.

As the undisputed facts demonstrate that Sky breached the contracts, Hammer is entitled to judgment as a matter of law. Hammer has submitted uncontested evidence that Sky has failed to pay invoiced amounts totaling $526,966.78. Hammer is entitled to judgment in that amount, together with prejudgment interest in the amount of $173,660.41. Post judgment interest will be imposed as a matter of law at the federal rate that applies to all federal judgments. *See e.g., Travelers Property Cas. Ins. Co. v. National Union Insurance Company,* 735 F.3d 993, 1007-08 (8th Cir. 2013).

Sky admits that the contracts provide that Hammer can recover its reasonable attorneys' fees and expenses incurred in connection with its instant collection efforts. Sky, however, contends that Hammer has not demonstrated its entitlement to the requested fees in this case. "If a contract provides for the payment of attorneys' fees and expenses incurred in the enforcement of a contract provision, the trial court must comply with the terms of the contract and award them to the prevailing party."

*DocMagic, Inc. v. Mortgage Partnership of America, L.L.C.*, 729 F.3d 808, 812 (8th Cir. 2013) (applying Missouri law) (internal quotation marks and citation omitted). Hammer seeks an award of attorneys' fees totaling $106,134.85, which consists of $55,948.78 charged by St. Louis counsel David M. Duree & Associates, P.C. and $50,186.07 charged by New York/New Jersey counsel Gibbons, P.C. Sky argues that these amounts are insufficiently detailed, "unnecessarily inflated," that the use of two firms "raises concerns about duplication of work," and that the reasonableness of the hourly rates is not supported by sufficient evidence. (Doc. 96).

The reasonableness of counsel's fee is an issue for the Court, not a jury, to decide. *Spiritas Co. v. Ins. Co. of State of Pa.*, 555 F.3d 647, 654 (8th Cir. 2009). "This is true whether the fee award occurs in the context of a grant of summary judgment or following a jury trial." *Id.* The starting point in determining the reasonableness of statutory attorney fees is the lodestar, which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Once that rate is determined, it may be adjusted upward or downward based on a consideration of various factors, including the time and labor required, the difficulty of the work and skill required to perform it properly, and the amount involved and the results obtained. *See Johnson v. Georgia Highway Express*, 488 F.2d 714, 717-19 (5th Cir. 1974). A reasonable

hourly rate is usually the ordinary rate for similar work in the community where the case was litigated. *See Emery v. Hunt*, 272 F.3d 1042, 1048 (8th Cir. 2001).

Sky's location and the location of its construction activities in New York necessitated the use of a New York law firm. Hammer, located in Missouri, was entitled to file its case here, but was required to take the depositions of Sky's witnesses and do other legal work in New York. Significant work necessary to the litigation took place in both locations, and the use of two law firms saved travel expenses. The invoices are also sufficiently detailed for me to conclude that there was no unnecessary duplication of work.

Although normally the Court would expect to see affidavits from other lawyers attesting to the reasonableness of the hourly rates in the two communities, in this case such affidavits are not necessary for the Court to conclude that the amounts sought are reasonable. Mr. Duree's hourly rate of $275 is well within the norm for St. Louis, and most of the Gibbons charges were billed at the rate of $295 per hour, which is also reasonable. Although some of the New York lawyers were billed at substantially higher rates, I find that these rates are also reasonable,[7] and note that most of the work in New York was done by counsel with the lower hourly rates.

---

[7] This Court, like most district courts, is "intimately familiar" with the local bar and with prevailing rates in the community. *See Banks v. Slay,* 875 F.3d 876, 882-83 (8th Cir. 2017). Additionally, my experience from other cases with rates charged in other jurisdictions convinces me that all the rates charged here are reasonable, and that, in any event, the lodestar is not the only factor the Court must consider.

Most importantly, the attorneys' fees sought, when considered in the context of the case, are very reasonable. The judgment before attorneys' fees is more than seven hundred thousand dollars, and so a fee of slightly more than one hundred thousand dollars is not out of line for the result achieved. This should have been a routine collection case, and probably should have been resolved expeditiously through settlement, as most collection cases are. But as it is obvious that litigating the case was necessary, Sky's litigation posture and conduct greatly increased the legal fees necessarily incurred by Hammer. As stated above, Sky had no admissible evidence to support its supposed defense. Sky's lack of cooperation in discovery made it extremely difficult for Hammer to get to the root of the false statements.[8] Hammer's numerous motions to compel and for sanctions were mostly well-taken, and would not have been necessary but for Sky's actions during the litigation. The fee request of $106,134.85 is entirely reasonable under the circumstances.

Finally, Hammer moves for sanctions in the amount of $39,620.00[9] to be awarded against Sky, Mr. Cholowsky, Jason Finkelstein, and the law firm

---

[8] For example, Sky argued that Hammer did not need to take the depositions of Mr. Braiden and Mr. Linnane because Mr. Cholowsky could testify "with first-hand knowledge of all facts and circumstances relevant to this litigation." (Doc 34 at p. 3; Doc., 44). Given the testimony ultimately provided by all these witnesses, this argument was baseless.

[9] This amount represents attorneys' fees Hammer alleges it incurred in this case following the Court's denial of its first motion for summary judgment. As Hammer is entitled to recover its attorneys' fees from Sky under the agreements, it suggests that this amount should be awarded

16

representing Sky (Cole Schotz, P.C.) as a sanction for advancing a sham defense that lacked any factual basis. In addition to filing a false affidavit, Sky provided answers to interrogatories that its witnesses later admitted were provided without any investigation and were not correct.[10] In response to the motion for sanctions, Sky has provided affidavits of its lawyers Mr. Finkelstein and Brian L. Gardner discussing in detail the conversations they had with their client, apparently to show that their investigation was reasonable. But their client has essentially testified under oath that it signed affidavits and interrogatories that were prepared by the lawyers. The corporate witnesses say they either don't remember signing the documents or simply signed what the lawyers sent after "breezing through" them. And the witnesses testified that despite their lack of personal knowledge, they did nothing to investigate the truth of the information they were providing under oath on behalf of Sky.

Counsel purport to be shocked that their client told them a story that had no factual basis. They state that they were completely unaware until the depositions of Mr. Braiden and Mr. Linnane that neither of these witnesses had engaged in

---

against Mr. Cholowsky, attorney Finkelstein, and Cole Schotz, P.C. for the flagrant discovery abuses in this case and that a separate monetary penalty be imposed against Sky.

[10] While Sky has argued that the witnesses were testifying to the corporation's knowledge (despite stating that they were providing evidence based on personal knowledge), a corporation's knowledge has to come from somewhere, and here, no witness can provide competent testimony to support the defense. "Somebody said something to someone" is not admissible evidence, whether it is offered by a human being or a corporation.

17

conversations with Hammer about returning the equipment. (Doc. 94-1; 94-2). Counsel also argue that sanctions cannot be imposed because Hammer failed to follow the requirements of Rule 11, Fed. R. Civ. P. That rule, by its explicit terms, "does not apply to disclosures and discovery requests, responses, objections, and motions under Rules 26 through 37." Fed. R. Civ. P. 11(d).

Several sources of law would allow the imposition of sanctions here. Federal Rule 26(g)(3) authorizes sanctions if an attorney violates the certification provision of the discovery rules set out in Rule 26(g)(1), Fed. R. Civ. P. Rule 37(b)(2) authorizes a variety of sanctions to be levied against a corporate party or its attorney who "fails to obey an order to provide or permit discovery." The Court also possesses inherent power to impose sanctions for discovery abuses. *See Sylla–Sawdon v. Uniroyal Goodrich Tire Co.*, 47 F.3d 277, 280 (8th Cir. 1995).

Although I am very concerned about this conduct, I conclude that the contract award, including interest and attorneys' fees, will make Hammer whole. I therefore exercise my discretion and decline to award monetary sanctions.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's second motion for summary judgment [86] is granted, and plaintiff shall have summary judgment against defendant on all claims raised in the complaint.

**IT IS FURTHER ORDERED** that plaintiff shall recover the sum of $806,762.04, which consists of the principal amount due under the contracts of $526,966.78, prejudgment interest in the amount of $173,660.41, and attorneys' fees in the amount of $106,134.85.

**IT IS FURTHER ORDERED** that plaintiff's motion for sanctions [80] is denied.

A judgment in accord with this Memorandum and Order is entered this same date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 24th day of October, 2019.